IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

RONALD JOHNSON,          :
                         :
         Plaintiff,      :
                         :
    v.                   :        Civ. No. 09-299-LPS
                         :
OFFICER CROCKER,         :
                         :
         Defendant.      :

Ronald G. Johnson, Homeless, Pro Se Plaintiff.

Andrea Jeane Faraone Rhen, Esquire, City of Wilmington Law Department, Wilmington, Delaware. Counsel for Defendant.

**MEMORANDUM OPINION**

August 7, 2012
Wilmington, Delaware

STARK, U.S. District Judge:

## I. INTRODUCTION

Plaintiff, Ronald Johnson ("Johnson"), a former inmate at the Howard R. Young Correctional Institution ("HRYCI") in Wilmington, Delaware, filed this lawsuit pursuant to 42 U.S.C. § 1983.[1] He also raises supplemental State claims of false arrest and malicious prosecution. Johnson appears pro se and has been allowed to proceed in forma pauperis. (D.I. 5)

Pending before the Court are Defendant Wilmington Police Officer Crocker's ("Crocker") Motion for Summary Judgment, Johnson's Requests for Counsel, and Johnson's Motions for a Mental Evaluation, Reconsideration, to Stay, a Hearing, Copies of Filings, and an Order for Transcripts from the Court of Common Pleas of the State of Delaware.[2] (D.I. 58, 70, 72, 73, 74, 76, 77) The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

For the reasons that follow, the Court will deny the Requests for Counsel, will grant the Motion for Summary Judgment, and will deny as moot the remaining motions.

## II. BACKGROUND

Johnson filed his Complaint on April 27, 2009 against Crocker and the Wilmington

---

[1]Over the course of this litigation, Johnson has spun through a revolving door of incarceration, release, reincarceration, and release. (*See* D.I. 1, 6, 9, 15, 19, 212, 24, 28, 33, 36, 37, 40, 41, 42, 46, 63, 70) On July 16, 2012, Johnson filed change of address, stating that he has been homeless for the past thirty days and has no address to receive mail. (D.I. 79) To date, he has not provided a mailing address.

[2]The transcript Johnson seeks was produced at D.I. 22 and D.I. 58. Some of the motions provide no argument or law in support of the relief sought. For example, the title of one motion seeks reconsideration, but there is no mention of reconsideration in the body of the motion. (*See* D.I. 72)

1

Police Department.[3] (D.I. 2) He alleges false arrest by Crocker, that Crocker falsified a police report to charge him with felony aggravated menacing and possession of a deadly weapon, and that Crocker refused to arrest an individual who robbed him. (D.I. 2)

On April 8, 2009, at approximately 2:25 a.m., Crocker saw several persons running near the intersection of 4th and Jackson Streets in Wilmington, Delaware. (D.I. 60 Ex. A30 at ¶ 2; A36-37) When he arrived at the intersection, he was flagged down by Donald Brown ("Donald") who told him that two male subjects had attempted to rob his godbrother, Mike Brown ("Mike"). (*Id.* at A30 at ¶ 2; A37) Donald related that just a few minutes earlier, Mike had telephoned him, yelling, "Yo, I'm being robbed." (*Id.*) Donald left his residence to help Mike. (*Id.* at A30-31 at ¶ 2; A37) Donald's friend, Angelo Lloyd ("Lloyd"), also hurried to help Mike. (*Id.* at A31 at ¶ 2; A37)

Donald told Crocker that when he and Lloyd arrived at the intersection, they saw a man, later identified as Johnson, who was holding a machete in his hand. (*Id.*) Donald and Lloyd saw a second man, later identified as Michael Clark ("Clark"), who was holding a brick in his hand. (*Id.* at A31 ¶ 2) According to Donald, Johnson proceeded to wave the machete at him, while Clark gestured as if he was going to throw the brick at him. (*Id.*) Johnson and Clark ran in separate directions. (*Id.*) Donald chased Johnson after he saw Johnson discard the machete at an I-95 off-ramp area. (*Id.*) It was while he was pursuing Johnson that Donald saw Crocker and tried to flag him down. (*Id.*)

---

[3]The Wilmington Police Department was dismissed as a defendant upon screening of the case. (*See* D.I. 12, 13)

Lloyd told Crocker that he had seen Johnson holding a long knife that he believed was a machete. (*Id.* at A31 at ¶ 3; A38) Lloyd indicated that Johnson had waved the machete at Donald, that he had seen Clark holding a brick in his hand, and that Clark had made gestures as if he was going to throw the brick at Donald. (*Id.* at A31 at ¶ 3; A38) Donald positively identified Johnson as the individual who had waved a machete at him and provided a description of Johnson. (*Id.* at A32, ¶ 5; A37)

During this time, Crocker saw Johnson running and pursued him. (*Id.* at A31 at ¶ 4; A37) As he approached Johnson, Crocker ordered him to stop; Johnson surrendered and was handcuffed; then Johnson was placed in the back of Crocker's police vehicle without incident. (*Id.*) Prior to placing Johnson in the police vehicle, Crocker conducted a pat-down search for weapons and discovered a pocket-knife. (*Id.* at A31, ¶ 4)

Crocker and other police units unsuccessfully searched the area for the machete. (*Id.* at A32, ¶ 6; A37) Following the search, Crocker returned to his police vehicle and Johnson informed him that the pocketknife was the only knife in his possession and that he had used it for protection when he confronted Donald. (*Id.* at A32 at ¶ 7; A37; A53) Johnson told Crocker that Mike was not a robbery victim. Rather, Mike had attempted to rob Clark by taking his I-Pod.[4] (*Id.* at A32 at ¶ 8; A50-51; A53-54) Crocker was unable to interview Mike to verify Johnson's allegations because Mike had left the scene and could not be located. (*Id.* at A32 at ¶ 8; A38) At that point, Crocker focused his attention on finding the machete and Clark, who was potentially

---

[4] According to Johnson, the I-Pod was left at the scene of the confrontation with Mike but, when Crocker returned to 4th and Jackson Streets to look for the I-Pod, he found only an electrical cord of the type used to plug into an electrical outlet on a wall rather than for an I-Pod. (*Id.* at A32 at ¶ 9; A53-54) Crocker did not see any evidence of broken pieces of an I-Pod, an I-Pod case, or I-Pod earplugs. (*Id.* at A32-33, ¶ 9; A54)

3

in possession of a deadly weapon (i.e., the machete and/or the brick). Crocker believed they posed a greater risk to safety than Mike, who was not alleged to be in possession of a deadly weapon.[5] (*Id.* at A32 at ¶ 8)

Johnson informed Crocker that Clark had fled the scene and was probably at his home. (*Id.* at A33 at ¶ 10; A37-38) Crocker then went to Clark's residence and knocked on the door. (*Id.* at A33 at ¶ 10; A38) Clark opened the door and was holding a machete. (*Id.* at A33 at ¶ 11; A38) Crocker confiscated the machete and placed Clark into custody without incident. (*Id.*) Crocker interviewed Clark who told him that he and Johnson had been involved in an altercation with Mike over an MP3 player and that Mike had taken the MP3 player from Clark. (*Id.* at A33 at ¶ 10) Crocker later showed Donald the knife taken from Clark, and Donald positively identified it as the machete held by Johnson at the time of their confrontation. (*Id.*) Donald did not recant his identification, or change his description of the knife that Johnson waved at him. (*Id.* at A33 at ¶ 11)

Crocker sought, and obtained, arrest warrants for Johnson and Clark for the crimes of aggravated menacing, in violation of 11 Del. C. § 602(b), and possession of a deadly weapon during the commission of a felony, in violation of 11 Del. C. § 1447. (D.I. 3; D.I. 60 Exs. A33-34 at ¶ 14) The judge issuing the arrest warrant found probable cause existed based upon Crocker's affidavit. (D.I. 3)

Johnson's preliminary hearing was held on April 15, 2009, in the Delaware Court of Common Pleas. (*Id.* at A34, ¶ 15; A40-66) Johnson refused representation by counsel at the

---

[5]Crocker did not arrest Mike following his investigation because he did not believe there was probable cause to charge him with robbery, attempted robbery, or any other crime. (*Id.* at A34, ¶ 14)

4

preliminary hearing and chose to proceed pro se. (*Id.* at A34, ¶ 15; A42) During the hearing, Crocker testified under oath on behalf of the State. (*Id.* at A34, ¶ 15; A40-66) The Court of Common Pleas found probable cause to charge Johnson with the crimes of aggravated menacing and possession of a deadly weapon during the commission of a felony. (*Id.* at A64) Johnson was bound over to answer to those charges in the Delaware Superior Court. (*Id.* at A34, ¶ 15; A64)

On May 1, 2009, the State of Delaware entered a nolle prosequi on the charges against Johnson for aggravated menacing and possession of a deadly weapon during the commission of a felony. (D.I. 60 Ex. A-68) The case was then transferred to the Delaware Court of Common Pleas and set for trial on the lesser included misdemeanor offenses of menacing and third degree conspiracy, pursuant to 11 Del. C. § 511. (*Id.* at A-68; A-83-84). The Court of Common Pleas later dismissed the charges pursuant to Del. C. C. P. Crim. R. 48(b) due to the prosecution's delay in bringing the case to trial. (*Id.* at A-84)

### III. REQUEST FOR COUNSEL AND RULE 17(c)

Johnson requests counsel on the grounds that he is mentally ill, has had mental breakdowns several times in the past year, "is suffering from bi-polar, schizo delusion thought, seeing, and hearing things that not there and/or should not be there," depression, and anxiety. (D.I. 70, 72, 76)

Federal Rule of Civil Procedure 17(c)(2) provides that "[t]he court must appoint a guardian ad litem - or issue another appropriate order - to protect a minor or incompetent person who is unrepresented in an action." The United States Court of Appeals for the Third Circuit has determined that the district court has a responsibility, under Rule 17(c)(2), to inquire sua sponte into whether a pro se litigant is incompetent to litigate his action and is, therefore, entitled to

either appointment of a guardian ad litem or other measures to protect his rights. *See Powell v. Symons*, 680 F.3d 301, 307 (3d Cir. 2012).

The Court considers whether Rule 17(c) applies "[i]f a court [is] presented with evidence from an appropriate court of record or a relevant public agency indicating that the party had been adjudicated incompetent, or if the court receive[s] verifiable evidence from a mental health professional demonstrating that the party is being or has been treated for mental illness of the type that would render him or her legally incompetent." *Id.* The Court "need not inquire sua sponte into a pro se plaintiff's mental competence based on a litigant's bizarre behavior alone, even if such behavior may suggest mental incapacity." *Id.* at 303 (citations omitted). The decision whether to appoint a next friend or guardian ad litem rests with the sound discretion of the district court. *See id.*

In the instant action, Johnson makes bald allegations of mental illness, but he has not submitted any verifiable evidence of incompetence to this Court.[6] Thus, this Court has no duty to conduct a sua sponte determination of competency under Rule 17(c)(2).

A pro se litigant proceeding in forma pauperis has no constitutional or statutory right to representation by counsel.[7] *See Brightwell v. Lehman*, 637 F.3d 187, 192 (3d Cir. 2011); *Tabron*

---

[6]The record contains a letter from Debbie Snyder ("Snyder"), a therapist at Connections Community Support Programs ("Connections"), dated June 29, 2010, stating that Johnson is a client of Connections outpatient clinic and is compliant with his appointments. (D.I. 29 at 5) Connections is a not-for-profit organization that provides community-based housing, health care and employment services in Delaware. *See* www.connectionscsp.org. Snyder does not indicate what services were provided to Johnson at that time. Johnson has been in and out prison since the date of the letter. It is unknown if he continues to receive services at Connections.

[7]*See Mallard v. United States Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989) (§ 1915(d) – now § 1915(e)(1) – does not authorize federal court to require unwilling attorney to represent indigent civil litigant, as operative word in statute is "request.").

*v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993). However, representation by counsel may be appropriate under certain circumstances, after a finding that a plaintiff's claim has arguable merit in fact and law. *See Tabron*, 6 F.3d at 155.

After passing this threshold inquiry, the Court should consider a number of factors when assessing a request for counsel. Factors to be considered include: (1) the merits of the plaintiff's claim; (2) the plaintiff's ability to present his or her case considering his or her education, literacy, experience, and the restraints placed upon him or her by incarceration; (3) the complexity of the legal issues; (4) the degree to which factual investigation is required and the plaintiff's ability to pursue such investigation; (5) the plaintiff's capacity to retain counsel on his or her own behalf; and (6) the degree to which the case turns on credibility determinations or expert testimony. *See Montgomery v. Pinchak*, 294 F.3d 492, 498-99 (3d Cir. 2002); *Tabron*, 6 F.3d at 155-56. The list is not exhaustive, nor is any one factor determinative. *See Tabron*, 6 F.3d at 157.

After reviewing Johnson's requests, the Court concludes that this case is not so factually or legally complex that requesting an attorney is warranted. To date, the filings in this case demonstrate Johnson's ability to articulate his claims and represent himself. In addition, the Court was provided with a transcript of a preliminary hearing wherein Johnson refused counsel and proceeded pro se. The transcript shows Johnson's ability to represent himself in open court, including by effective cross-examination. In these circumstances, the Court will deny without prejudice to renew Johnson's requests for counsel. (D.I. 70, 72, 77)

## IV. SUMMARY JUDGMENT

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133,150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podohnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal

quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" and a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the non-moving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252.

Crocker filed a Motion for Summary Judgment on October 6, 2011. (D.I. 58) Johnson did not file a timely response and, subsequently, the Court entered an Order setting a new briefing schedule, with Johnson's answering brief due on March 14, 2012. (D.I. 61) The Order was sent to his address of record. It was not returned as undeliverable. Yet Johnson did not file an opposition to the Motion. Johnson was reincarcerated on April 24, 2012 and, thereafter, filed several Requests for Counsel. (D.I. 63, 70, 72, 74, 76) On May 9, 2012, the clerk's office sent Johnson a copy of the court docket, free of charge. (D.I. 79) Nonetheless, Johnson did not file an opposition to the Motion for Summary Judgment. Prior to his April 2012 reincarceration, Johnson had taken no action in the case since August 19, 2011. (D.I. 57, 63)

9

The Court is mindful that Johnson did not file an opposition to Crocker's motion for summary judgment. The Court will not grant the entry of summary judgment without considering the merits of Crocker's motion, although unopposed. *See Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991) (holding that district court should not have granted summary judgment solely on basis that motion for summary judgment was not opposed).

## V. **DISCUSSION**

Crocker moves for summary judgment on the grounds that Johnson cannot succeed in demonstrating a lack of probable cause for his arrest.[8] (D.I. 59) More particularly, Crocker argues that the probable cause determination made at Johnson's preliminary hearing conclusively established the existence of probable cause to arrest him, defeating Johnson's § 1983 and State law claims for false arrest, false imprisonment, and malicious prosecution.

To succeed on false arrest and false imprisonment claims, Johnson must establish that probable cause was lacking for his arrest and related detention. *See Groman v. Township of Manalapan*, 47 F.3d 628, 634-36 (3d Cir. 1995). Probable cause to arrest exists when the facts and circumstances known to the arresting officer are sufficient to warrant a reasonable person to believe that an offense has been committed by the suspect. *See United States v. Stubbs*, 281 F.3d 109, 122 (3d Cir. 2002); *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000). Although the issue of probable cause is usually a factual one, a district court may conclude "that probable cause did exist as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not

---

[8]The summary judgment motion also seeks summary judgment on behalf of the City of Wilmington. The City of Wilmington is no longer a party and, therefore, the Court does not address this portion of the motion.

10

support a contrary factual finding;" in such a circumstance, the Court may enter summary judgment. *See Estate of Smith v. Marasco*, 318 F.3d 497, 514 (3d Cir. 2003).

When a plaintiff challenges probable cause to file charges on the basis that the officer submitted a false affidavit to the judicial officer, the plaintiff has the burden of proving two elements. *See Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997). Johnson must first establish that "[Crocker] knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions in his affidavit of probable cause that create a falsehood in applying for an arrest warrant; and [] such statements or omissions are material to the finding of probable cause." *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 789 (3d Cir. 2000) (citing *Franks v. Delaware*, 438 U.S. 154, 171-72 (1978); *Sherwood*, 113 F.3d at 399). An omission is made with reckless disregard for the truth when "an officer withholds a fact in his ken that any reasonable person would have known . . . was the kind of thing the judge would wish to know." *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000) (internal quotation marks omitted). Statements are made with reckless disregard for the truth if the officer or affiant proffers them "with [a] high degree of awareness of their probable falsity." *Lippay v. Christos*, 996 F.2d 1490, 1501 (3d Cir. 1993) (internal quotation marks omitted).

Here, the affidavit of probable cause and preliminary hearing testimony indicate that: (1) Johnson was identified by others as an individual who had attempted robbery and who had been holding and waving a machete at individuals; (2) Crocker saw Johnson running in the area for unknown reasons; and (3) a machete knife was recovered from Clark, a friend of Johnson's who had been with Johnson and who had fled the scene. Even viewing the facts in the light most favorable to Johnson, the credible identification of Johnson as the person who had attempted

11

robbery and who had waved a machete at others, coupled with the Clark's possession of a machete, was sufficient to establish probable cause to arrest Johnson.

Because Crocker had probable cause to arrest Johnson, the false imprisonment and malicious prosecution claims fail as a matter of law. *See Groman v. Township of Manalapan,* 47 F.3d 628, 636 (3d Cir. 1995) (false imprisonment); *Estate of Smith,* 318 F.3d at 521 (holding that malicious prosecution plaintiff must show, inter alia, that criminal proceeding was initiated without probable cause). The fact that the criminal charges were eventually nolle prossed does not save Johnson's claims. *See Donahue v. Gavin,* 280 F.3d 371, 383 (3d Cir. 2002) (noting grant of nolle prosequi that does not establish actual innocence cannot be used as basis for establishing malicious prosecution).

Finally, there is no evidence to support Johnson's claim that Crocker violated Johnson's constitutional rights when he failed to arrest the individual who allegedly robbed Johnson. Upon review of the record, the Court finds that a reasonable jury could not return a verdict for Johnson on this issue.

For the above reasons, the Court will grant Crocker's motion for summary judgment. Because summary judgment is appropriate as to Johnson's federal claims, the Court will decline to exercise supplemental jurisdiction to the extent Johnson raises state law claims. *See* 28 U.S.C. § 1367(c); *De Asencio v. Tyson Foods, Inc.,* 342 F.3d 301, 309 (3d Cir. 2003).

## VI. CONCLUSION

For the above reasons, the Court will grant Crocker's Motion for Summary Judgment, will deny without prejudice Johnson's Requests for Counsel, and will deny as moot Johnson's remaining motions. (D.I. 58, 70, 72, 73, 74, 76, 77) The Court will decline to exercise supplemental jurisdiction.

An appropriate Order follows.